**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cr-41** |
| | ) | **The Honorable David J. Novak** |
| **MUHAMMAD PAHLAWAN,** | ) | |
| **Defendant** | ) | |

## <u>MR. PAHLAWAN'S MOTION TO DISMISS COUNT THREE OR FOUR OF THE SUPERSEDING INDICTMENT FOR MULTIPLICITY</u>

Muhammad Pahlawan, by counsel and pursuant to Rule 12 of the Federal Rules of Criminal Procedure, moves the Court to either merge Counts Three and Four of the superseding indictment or dismiss one count because Mr. Pahlawan cannot be punished for both counts under the Double Jeopardy Clause of the Fifth Amendment. The Double Jeopardy Clause protects against, among other things, multiple punishments for the same offense in a single proceeding. As part of its protection against multiple punishments, the Double Jeopardy Clause creates a rule of statutory construction that a defendant may only be punished once for a particular statutory violation arising from a single course of conduct unless Congress unambiguously intended for a single course of conduct to violate the statute in multiple ways. Courts have referred to this rule as the "rule against multiplicity" or the "unit of prosecution" rule.

In this case, the government has charged Mr. Pahlawan with two counts of the same statutory violation arising from the same course of conduct. Counts Thee and Four of the Superseding Indictment both charge Mr. Pahlawan with providing material support or resources to a weapons of mass destruction program of a foreign terrorist power in violation of 18 U.S.C. § 832(a). The counts allege identical conduct constituting the alleged material support. The only distinction between the two is that Count Three charges Mr. Pahlawan with providing material

1

support or resources to Iran's weapons of mass destruction program, while Count Four charges Pahlawan with providing material support or resources to the Iranian Revolutionary Guard Corps's ("IRGC") weapons of mass destruction program. According to the Superseding Indictment, the IRGC is a branch of the Iranian military and a counterintelligence agency under the authority of Iran's Supreme Leader, Ayatollah Ali Khamenei. Moreover, the Iranian weapons of mass destruction program and the IRGC weapons of mass destruction program is the *same* program. Congress did not intend for a defendant to be punished for violating § 832(a) for a single course of conduct constituting prohibited material support; at the very least, Congress did not intend to do so unambiguously. As such, Pahlawan may not be punished for both Counts Three and Four, and the Court must either merge the two counts or dismiss one of them.

## BACKGROUND

The Superseding Indictment alleges that around August 2023, two Iranian nationals, Shahab Mir'Kazei and Yunus Mir'Kazei, hired Mr. Pahlawan to participate in a scheme to smuggle weapons from Iran to the Houthi rebels in Yemen. ECF No. 79 at ¶ 2. As part of the alleged scheme, the Mir'Kazei brothers provided Mr. Pahlawan with a fishing boat called the "Yunus" and paid Mr. Pahlawan in Iranian currency, which he distributed to his family at home in Pakistan. *Id.* at ¶¶ 2, 34.

On January 11, 2024, Mr. Pahlawan and thirteen other foreign nationals were on board the Yunus in international waters off the coast of Somalia in the Arabian Sea. *Id.* ¶ 1, 40, 42. An American Navy ship was also off the coast of Somalia that day. *Id.* U.S. military personnel on the Navy ship were watching the Yunus and decided to board it to conduct a "flag verification." *Id.* at ¶ 1. As U.S. Navy personnel were trying to board the Yunus, two Navy SEALs fell into the water and drowned. *Id.*

2

U.S. military personnel allegedly located conventional weapon components on the Yunus sometime after boarding. *Id.* The military personnel then transferred Mr. Pahlawan and the other crew members to the Navy ship and sunk the Yunus in the Arabian Sea. Weeks later, Mr. Pahlawan was transported to the United States for prosecution in this case.

A grand jury in this District returned a superseding indictment charging Mr. Pahlawan with eight offenses. Counts Three and Four charge Mr. Pahlawan with violating 18 U.S.C. § 832(a) by knowingly providing and attempting to provide "material support or resources," as defined in 18 U.S.C. § 2339A(b), to, and willfully participating in, a "weapons of mass destruction program," as defined in 18 U.S.C. §§ 832(d)(2) and 2332a(c), of a "foreign terrorist power," as defined in 18 U.S.C. § 832(d)(3). ECF No. 79 at 15–16. The only distinction between the two counts is that Count Three alleges that Mr. Pahlawan provided material support and resources to Iran's weapons of mass destruction program, while Count Four alleges that Mr. Pahlawan provided material support and resources to the IRGC's program. *Id.* The superseding indictment states that Iran is a "State Sponsor of Terrorism" as designated under Section 6(j) of the Export Administration Act of 1979 or Section 620A of the Foreign Assistance Act of 1961. *Id.* at ¶ 9. The IRGC is a "designated terrorist organization" pursuant to Section 219 of the Immigration and Nationality Act. *Id.* at ¶ 10. The superseding indictment further states that "[t]he IRGC is an Iranian military and counterintelligence agency under the authority of Iran's Supreme Leader, Ayatollah Ali Khamenei[.]" *Id.* at ¶ 11.

## **ARGUMENT**

Federal Rule of Criminal Procedure 12(b)(3) provides that a party must allege a defect in the indictment by pretrial motion "if the basis for the motion is then reasonably available and the

3

motion can be determined without a trial on the merits." Rule 12(b)(3)(B)(ii) specifically enumerates multiplicity as an objection that must be raised by pretrial motion.

The Double Jeopardy Clause of the Fifth Amendment protects criminal defendants from "the imposition of multiple punishments for the same offense in a single criminal trial." *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012). The "rule against multiplicity" is a rule of statutory construction arising from the Double Jeopardy Clause's prohibition of multiple punishments for the same offense. *See United States v. Smith*, 54 F.4th 755, 763 (4th Cir. 2022) ("The rule against multiplicity is rooted in the Double Jeopardy Clause of the Fifth Amendment[.]") (quoting *Shrader*, 675 F.3d at 313). An indictment violates the Double Jeopardy Clause on multiplicity grounds when it "charg[es] a single offense in more than one count[.]" *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000). The typical remedy is dismissal of all but one of the violating counts. *See Smith*, 54 F.4th at 766 (reversing district court's denial of defendant's motion to dismiss one of two multiplicitous counts); *United States v. Bennafield*, 287 F.3d 320, 324 (4th Cir. 2002) (vacating conviction on multiplicitous count); *cf. United States v. Shorter*, 328 F.3d 167, 173 (4th Cir. 2003) (noting that court can merge duplicative counts).

To determine whether two counts are multiplicitous, courts must first identify what Congress intended to be "the allowable unit of prosecution." *Id.* at 763. Determining the unit of prosecution depends on the exact text of the statute in question. *See United States v. Bennafield*, 287 F.3d 320, 323 (noting that to determine the unit of prosecution, courts "must look to the language of the statute"). However, "[i]f Congress fails to define the criminal unit or the legislative intent in this regard is ambiguous, any ambiguity should be resolved in favor of lenity." *Smith*, 54 F.4th at 763 (cleaned up); *see also United States v. Davis*, 588 U.S. 445, 464 ("[T]he rule of lenity[] teach[es] that ambiguities about the breadth of a criminal statute should be resolved in the

4

defendant's favor. That rule is 'perhaps not much less old than' the task of statutory 'construction itself.'") (quoting *United States v. Wiltberger*, 18 U.S. 76, 95 (1820) (Marshall, C.J.)).

Congress often defines an offense's unit of prosecution by a course of conduct. *See, e.g., United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 220 (1952) (noting that unit of prosecution for offense at issue was defined by "a course of conduct rather than the separate items in such course that constitutes the punishable offense"). Accordingly, the Fourth Circuit has vacated multiplicitous convictions arising from a single course of conduct where an indictment charged a defendant of multiple counts of lying to the FBI in violation of 18 U.S.C. § 1001(a)(2), *Smith*, 54 F.4th 755; transportation of child pornography in interstate or foreign commerce in violation of 18 U.S.C. § 2252(a)(1), *United States v. Buczkowski*, 458 Fed. App'x 311 (4th Cir. 2011); criminal contempt of court, *United States v. Murphy*, 326 F.3d 501 (4th Cir. 2003); possession of controlled substances in violation of 21 U.S.C. § 844(a), *Bennafield*, 287 F.3d 320; possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1), *United States v. Dunford*, 148 F.3d 385 (4th Cir. 1998); counterfeiting in violation of 18 U.S.C. §§ 371 and 473, *United States v. Cumber*, 937 F.2d 604 (4th Cir. 1991); and making false statements under 18 U.S.C. § 922(a)(6), *United States v. Mason*, 611 F.2d 49 (4th Cir. 1979). Unless Congress unambiguously intends for a single course of conduct to constitute multiple violations of a statute, a defendant may only be punished once for a particular statutory violation arising from a single course of conduct.

Moreover, the Supreme Court in *Blockburger* distinguished between criminal offenses that prohibit individual acts from those that prohibit conduct "continuous in its character." *Blockburger v. United States*, 284 U.S. 299, 302 (1932). Individual drug sales, for example, are "punishable

separately," but an "offense of engaging in the business of selling the forbidden drugs" constitutes "an offense continuous in its character," for which "there can be but one penalty." *Id.*

Counts Three and Four charge the same statutory violation—of 18 U.S.C. § 832(a)—arising from the same course of conduct, and Congress did not unambiguously intend for a defendant to face multiple punishments for the same violation of § 832(a). That statutory provision provides that—

> (a) Whoever, within the United States or subject to the jurisdiction of the United States, willfully participates in or knowingly provides material support or resources (as defined in section 2339A) to a nuclear weapons program or other weapons of mass destruction program of a foreign terrorist power, or attempts or conspires to do so, shall be imprisoned for not more than 20 years

18 U.S.C. § 832(a). Subsection (d) defines a "weapons of mass destruction program" as "program or plan for the development, acquisition, or production of any weapon or weapons of mass destruction (as defined in section 2332a(c))," and defines "foreign terrorist power" as "a terrorist organization designated under section 219 of the Immigration and Nationality Act, or a state sponsor of terrorism designated under section 6(j) of the Export Administration Act of 1979 or section 620A of the Foreign Assistance Act of 1961." 18 U.S.C. § 832(d)(2), (3). The only distinction between Counts Three and Four is that Iran is the "foreign terrorist power" in question in Count Three, and the IRGC is the "foreign terrorist power" in Count Four. Per the superseding indictment, Counts Three and Four allege the same course of conduct: the identical material support provided to the identical weapons of mass destruction program. ECF No. 79 at 15 (Count Three), 16 (Count Four).

The text of § 832(a) and the charged conduct indicate that the unit of prosecution is the charged continuous course of conduct amounting to material support. Indeed "participation," like "possession," is a continuous course of conduct that is not textually divisible into distinct or

6

separate offenses. *Cf. Bennafield*, 287 F.3d at 322–24 (holding that a defendant could only be convicted of a single act of possession for simultaneous possession of multiple packages of cocaine); *Dunford*, 148 F.3d at 389–90 (holding that a defendant could only be convicted of a single act of possession for multiple firearms that were seized from one location at the same time). The most natural reading of § 832(a) therefore is that the unit of prosecution is the charged "participat[ion] in or knowingly provid[ing] material support or resources" to a weapons of mass destruction program—in other words, the charged course of conduct, not whether the nameplate on the door of the weapons program contains one name or two.

Furthermore, any ambiguity as to the "unit of prosecution" must be resolved against the government. Particularly instructive is the Supreme Court's leading case on multiplicity, *Bell v. United States*, 349 U.S. 81 (1955).[1] In *Bell*, the petitioner pled guilty to two counts of violating the Mann Act, which read: "Whoever knowingly transports in interstate or foreign commerce . . . any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose" shall be fined or imprisoned. 349 U.S. at 82. The petitioner had "transported the two women in the same trip and in the same vehicle." *Id.* As such, he claimed that "he committed only a single offense and could not be subjected to cumulative punishment under the two counts." *Id.* The Supreme Court reversed his conviction on multiple counts, holding that Congress had not explicitly authorized multiple punishments for having two women in the vehicle during one trip:

> Congress could no doubt make the simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported. The question is: did it do so? It has not done so in words in the provisions defining the crime and fixing its punishment. Nor is guiding light afforded by the statute in its entirety or by any controlling gloss. . . . Again, it will

---

[1] While *Bell* located the rule against multiplicity in the Eighth Amendment, *see* 349 U.S. at 82, the Fourth Circuit has repeatedly cited *Bell* for the proposition that the rule of multiplicity arises from the Double Jeopardy Clause. *See, e.g., Smith*, 54 F.4th at 764; *Shrader*, 675 F.3d at 313.

> not promote guiding analysis to indulge in what might be called the color-matching of prior decisions concerned with the 'unit of prosecution' in order to determine how near to, or how far from, the problem under this statute the answers are that have been given under other statutes.

*Bell*, 349 U.S. at 82–83. The Supreme Court held that it was enough to consider the statute ambiguous as to the unit of prosecution that Congress had not explicitly defined the unit of prosecution in the Mann Act. In the final analysis, unless a statutory intent to permit multiple punishments is stated "clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 84.

Just as Congress did not "clearly and without ambiguity" state that one violation of the Mann Act could beget multiple punishments, Congress did not "clearly and without ambiguity" state that a continuous course of conduct in violation of 18 U.S.C. § 832(a) could beget multiple punishments based upon how many foreign terrorist powers have an ownership interest in the weapons program at issue. Therefore, Mr. Pahlawan cannot be punished for multiple counts arising out of the same course of conduct under § 832(a). That determination is especially clear here where Mr. Pahlawan is not even alleged to have provided material support or resources to two distinct weapons programs; as the Superseding Indictment acknowledges, the IRGC is part of Iran. *See* ECF No. 79 at ¶ 11. In sum, § 832(a) does not unambiguously make clear that providing material support or resources to a single weapons program constitutes two distinct violations of § 832(a) depending on the overlapping control of the program by a nation state, Iran, and a subordinate military force, the IRGC, where both satisfy the statutory definition of "Foreign Terrorist Power."

## CONCLUSION

Pursuant to the Double Jeopardy Clause of the Fifth Amendment, Mr. Pahlawan cannot be punished for both Counts Three and Four, which charge him with violating the same statute in the

8

same course of conduct. Accordingly, Mr. Pahlawan requests that the Court dismiss either Count

Three or Count Four of the superseding indictment, or merge the two counts into one.

Respectfully submitted,
MUHAMMAD PAHLAWAN

By: _____/s/_____

Amy L. Austin
Va. Bar No. 46579
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0880
amy_austin@fd.org

Laura Koenig
Va. Bar No. 86840
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA 22314
Ph. (804) 600-0800
Fax (804) 600-0880
geremy_kamens@fd.org

Emily Meyers Munn
Va. Bar No. 46390
Smith Law Firm
133 Kings Way
Hampton, VA 23669
757-619-1060
emily@emilymunn.law

9