**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:24-cr-41** |
| | ) | **The Honorable David J. Novak** |
| **MUHAMMAD PAHLAWAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

# MR. PAHLAWAN'S TRIAL BRIEF

Pursuant to the Court's Order in ECF No. 279, Mr. Pahlawan submits the following trial brief:

## I. Statement of the Case

Mr. Pahlawan and thirteen other foreign nationals were on board a launch on January 11, 2024, that was off the coast of Somalia in the Arabian Sea. The launch had started its voyage from a port in Iran several days earlier. Mr. Pahlawan had a Pakistani identification card with him on the launch. He had been living in Iran for a period of time before leaving Iran on the launch. Mr. Pahlawan had never been to the United States and had no ties to the United States.

According to the government, an American Navy ship, the U.S.S. Puller, was also off the coast of Somalia on January 11, 2024. Members of the U.S. Navy and the U.S. Coast Guard were watching the launch Mr. Pahlawan was on and decided to board the launch to conduct a "flag verification." On January 11, 2024, several U.S. Navy and U.S. Coast Guard personnel left the Puller in smaller boats and pulled up to launch Mr. Pahlawan was on. Once U.S. Navy and U.S. Coast Guard personnel

boarded the launch, military personnel aboard the launch found alleged explosive material before sinking the launch. Several weeks after the boarding of the launch, U.S. government personnel transported Mr. Pahlawan to the United States.

On December 4, 2024, the government filed a second superseding indictment against Mr. Pahlawan. ECF No. 239. The remaining counts in the second superseding indictment allege that Mr. Pahlawan transported weapons while working with two Iranian nationals as part of an operation to support the government of Iran and the Islamic Revolutionary Guard Corps. Mr. Pahlawan is charged with conspiring to provide material support to terrorists, in violation of 18 U.S.C. § 2339A (Count One); participating in weapons of mass destruction threats to the United States, in violation of 18 U.S.C. §§ 2, 832(a) and (b) (Counts Three and Four); conspiring to commit and committing violence against maritime transport, in violation of 18 U.S.C. §§ 2280(a)(1)(B)(i), (b)(1)(B) (Counts Five and Six); witness tampering, in violation of 18 U.S.C. § 1512(b)(3) (Count Seven); and providing materially false information to a federal law enforcement officer during the boarding of a vessel, in violation of 18 U.S.C. § 2237(a)(2)(B) (Count Nine).

## II. The Charges

### *a. Count One*

#### i. Essential elements

In order to sustain its burden of proof for the crime of conspiracy to provide material support to a Foreign Terrorist Power's weapons of mass destruction program

as charged in Count One of the second superseding indictment, the government must prove the following four (4) essential elements beyond a reasonable doubt:

**One**: that Muhammad Pahlawan knowingly entered into a conspiracy or agreement with one or more other persons;

**Two**: that the objective of the conspiracy was to provide material support or resources to a Foreign Terrorist Power's weapons of mass destruction program as set forth in Counts Three and Four;

**Three**: that Muhammad Pahlawan knew and intended that such support or resources would be used to participate in or supply support or resources to a Foreign Terrorist Power's weapons of mass destruction program, and entered into the conspiracy with that knowledge and specific intention, and

**Four**: that one of the following jurisdictional requirements exists:

(1) The defendant is a national of the United States;

(2) The offense occurred in whole or in part within the United States; or

(3) The defendant aided and abetted any person who was a national of the United States.

ii. Potential trial issues that may arise

As it relates to Counts One, Three, and Four, the Court has interpreted the "subject to the jurisdiction of the United States language" in Counts Three and Four, (charging a violation of 18 U.S.C. §§ 832(a), (b)), as creating a limit on subject matter jurisdiction that hinges on whether the launch is a "vessel without nationality" as

defined in 46 U.S.C. § 70502(d). *United States v. Pahlawan*, No. 24-cr-41, --- F. Supp. 3d ----, 2025 WL 27779, at *8-10 (E.D. Va. Jan. 3, 2025). The government bears the burden of proving that the launch was a "vessel without nationality." *See United States v. Prado*, 933 F.3d 121, 153-54 (2d Cir. 2019) (explaining government's burden). This is a jurisdictional element, so it must be "proven to a jury beyond a reasonable doubt" just like a substantive element. *Torres v. Lynch*, 578 U.S. 452, 467 (2016); *see Taylor v. United States*, 579 U.S. 301, 308 (2016) ("There is no question that the Government in a Hobbs Act prosecution must prove beyond a reasonable doubt that the defendant engaged in conduct that satisfies the Act's commerce element."); *Prado*, 933 F.3d at 139 n.9 ("[I]n prosecutions . . . with respect to vessels 'subject to the jurisdiction of the United States,' trial courts might be well advised . . . to submit the issue of jurisdiction over the vessel to the jury."); *United States v. Pantana Perez*, 619 F.3d 117, 120 (1st Cir. 2010) (submitting jurisdictional element to the jury). Here, the government cannot prove that the launch in this case was a "vessel without nationality" under 46 U.S.C. § 70502.

**b. Counts Three/Four**

i. <u>Essential elements</u>

In order to sustain its burden of proof for the crime of providing material support to a Foreign Terrorist Power's weapons of mass destruction program as charged in Counts Three and Four of the second superseding indictment, the government must prove the following (4) four essential elements beyond a reasonable

doubt:

**One**: that Muhammad Pahlawan knowingly;

**Two**: provided and attempted to provide material support or resources to, and willfully participated in;

**Three**: a weapons of mass destruction program of a foreign terrorist power; and

**Four**: that one of the following jurisdictional requirements exists:

(1) The defendant is a national of the United States;

(2) The offense occurred in whole or in part within the United States; or

(3) The defendant aided and abetted any person who was a national of the United States.

ii. Potential trial issues that may arise

As it relates to Counts One, Three, and Four, the Court has interpreted the "subject to the jurisdiction of the United States language" in Counts Three and Four, (charging a violation of 18 U.S.C. §§ 832(a), (b)), as creating a limit on subject matter jurisdiction that hinges on whether the launch is a "vessel without nationality" as defined in 46 U.S.C. § 70502(d). *United States v. Pahlawan*, No. 24-cr-41, --- F. Supp. 3d ----, 2025 WL 27779, at *8-10 (E.D. Va. Jan. 3, 2025). The government bears the burden of proving that the launch was a "vessel without nationality." *See United States v. Prado*, 933 F.3d 121, 153-54 (2d Cir. 2019) (explaining government's burden). This is a jurisdictional element, so it must be "proven to a jury beyond a

reasonable doubt" just like a substantive element. *Torres v. Lynch*, 578 U.S. 452, 467 (2016); *see Taylor v. United States*, 579 U.S. 301, 308 (2016) ("There is no question that the Government in a Hobbs Act prosecution must prove beyond a reasonable doubt that the defendant engaged in conduct that satisfies the Act's commerce element."); *Prado*, 933 F.3d at 139 n.9 ("[I]n prosecutions . . . with respect to vessels 'subject to the jurisdiction of the United States,' trial courts might be well advised . . . to submit the issue of jurisdiction over the vessel to the jury."); *United States v. Pantana Perez*, 619 F.3d 117, 120 (1st Cir. 2010) (submitting jurisdictional element to the jury). Here, the government cannot prove that the launch in this case was a "vessel without nationality" under 46 U.S.C. § 70502.

**c. Count Five**

i. <u>Essential elements</u>

In order to sustain its burden of proof for the crime of conspiracy to intentionally transport an explosive on board a ship in violation of 18 U.S.C. § 2280a, as charged in Count Five of the indictment, the government must prove the following four (4) essential elements beyond a reasonable doubt:

**One**: that Muhammad Pahlawan knowingly entered into a conspiracy with one or more other persons;

**Two**: that the objective of the conspiracy was to knowingly and intentionally transport on board a ship explosive material;

**Three**: that Muhammad Pahlawan knew and intended that the explosive was intended to be used to cause or threaten death or serious injury or damage for the purpose of intimidating a population or compelling a government or an international organization to do or to abstain from doing any act, and entered into the conspiracy with that knowledge and specific intention; and

**Four**: that such activity was conducted on board a ship in international waters and either (1) on a vessel without nationality, or (2) after such conduct, Mr. Pahlawan was later found in the United States.

ii. <u>Potential trial issues that may arise</u>

The law applicable to Count Five makes clear that the definitions of "armed forces" and "armed conflict" under the law of armed conflict are distinct from how an opposing belligerent may classify a conflict or an opposing force. In other words, for purposes of classifying World War II as an international armed conflict, and the German military as a military of a state, the fact that the German military engaged in wholesale and systemic violations of the laws of armed conflict is irrelevant.

The text of 18 U.S.C. § 2280a(c) does not carve out state military forces or other non-state armed groups that have been designated as terrorist organizations under domestic law from the scope of the exclusion. Enacted in 2015, § 2280a(c) could have included language such as that contained in 18 U.S.C. § 832 that specified that state actors or armed groups designated as state sponsors of terror or designated terrorist organizations were excluded. Not only did it not exclude such entities from the scope

of the statutory exclusion, but the exclusion incorporated by reference the law of armed conflict which explicitly applies to state actors and non-state armed groups regardless of their classification under domestic, also called municipal, law. § 2280a(c).

Accordingly, the United States' classification of the IRGC as a designated terrorist organization or Iran as a State Sponsor of Terror is immaterial to how Iran and the IRGC are classified for purposes of the law of armed conflict. Iran is a state. The IRGC is a state military force. The Houthis' classification as an "armed force" engaged in an "armed conflict" is likewise distinct from whether the United States has classified the Houthis as a designated terrorist organization. As Professor Hafetz explains, questions of whether the Houthis or the IRGC engage in "terrorism" is immaterial to their classification under the law of armed conflict.

Finally, the Court must instruct the jury that "activities" encompasses any "pursuit" by non-state armed force engaged in an armed conflict or a state military, specifically including supplying weapons and ammunition by civilians at the direction of such forces. As Professor Hafetz notes, such conduct is a "quintessential military activity" governed by the law of armed conflict. ECF No. 369-1, Hafetz Decl. ¶ 25. Indeed, civilians who transport such weapons are considered under the law of armed conflict to be directly participating in hostilities, and thus subject to armed attack by an opposing belligerent. *Id.* ¶ 26-27.

Finally, as Professor Hafetz notes, the statutory exclusion in § 2280a(c) would

not apply to non-state armed groups that do not satisfy the definition of an "armed force" under the law of armed conflict. In other words, the statutory exclusion applies to organizations like the Houthis, who have a well-organized military under a command structure. *See* Vladeck Expert Notice at 3-4. It would not apply to non-state armed groups like al-Qaeda that have operatives, not armies.

**d. Count Six**

i. Essential elements

In order to sustain its burden of proof for the crime of intentionally transporting an explosive on board a ship in violation of 18 U.S.C. § 2280a, as charged in Count Six of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:

**One**: that Muhamad Pahlawan knowingly and intentionally transported on board a ship explosive material;

**Two**: that Muhammad Pahlawan knew and intended that the explosive was intended to be used to cause or threaten death or serious injury or damage for the purpose of intimidating a population or compelling a government or an international organization to do or to abstain from doing any act; and

**Three**: that such activity was conducted on board a "covered vessel," which means in international waters, and either (1) on a vessel without nationality, or (2) after such conduct, Mr. Pahlawan was later found in the United States.

ii. Potential trial issues that may arise

The law applicable to Count Five makes clear that the definitions of "armed forces" and "armed conflict" under the law of armed conflict are distinct from how an opposing belligerent may classify a conflict or an opposing force. In other words, for purposes of classifying World War II as an international armed conflict, and the German military as a military of a state, the fact that the German military engaged in wholesale and systemic violations of the laws of armed conflict is irrelevant.

The text of 18 U.S.C. § 2280a(c) does not carve out state military forces or other non-state armed groups that have been designated as terrorist organizations under domestic law from the scope of the exclusion. Enacted in 2015, § 2280a(c) could have included language such as that contained in 18 U.S.C. § 832 that specified that state actors or armed groups designated as state sponsors of terror or designated terrorist organizations were excluded. Not only did it not exclude such entities from the scope of the statutory exclusion, but the exclusion incorporated by reference the law of armed conflict which explicitly applies to state actors and non-state armed groups regardless of their classification under domestic, also called municipal, law. § 2280a(c).

Accordingly, the United States' classification of the IRGC as a designated terrorist organization or Iran as a State Sponsor of Terror is immaterial to how Iran and the IRGC are classified for purposes of the law of armed conflict. Iran is a state. The IRGC is a state military force. The Houthis' classification as an "armed force"

engaged in an "armed conflict" is likewise distinct from whether the United States has classified the Houthis as a designated terrorist organization. As Professor Hafetz explains, questions of whether the Houthis or the IRGC engage in "terrorism" is immaterial to their classification under the law of armed conflict.

Finally, the Court must instruct the jury that "activities" encompasses any "pursuit" by non-state armed force engaged in an armed conflict or a state military, specifically including supplying weapons and ammunition by civilians at the direction of such forces. As Professor Hafetz notes, such conduct is a "quintessential military activity" governed by the law of armed conflict. Hafetz Decl. ¶ 25. Indeed, civilians who transport such weapons are considered under the law of armed conflict to be directly participating in hostilities, and thus subject to armed attack by an opposing belligerent. *Id.* ¶ 26-27.

Finally, as Professor Hafetz notes, the statutory exclusion in § 2280a(c) would not apply to non-state armed groups that do not satisfy the definition of an "armed force" under the law of armed conflict. In other words, the statutory exclusion applies to organizations like the Houthis, who have a well-organized military under a command structure. *See* Vladeck Expert Notice at 3-4. It would not apply to non-state armed groups like al-Qaeda that have operatives, not armies.

**e. Count Seven**

i. <u>Essential elements</u>

In order to sustain its burden of proof for the crime of witness tampering, the

government must prove each of the following (4) four elements beyond a reasonable doubt:

> **First**: that, between January 11 and January 13, 2024, while on a dhow, Muhammad Pahlawan knowingly used intimidation, threatened, corruptly persuaded, or engaged in misleading conduct toward M.H., U.F., M.A., or Mu.A, or attempted to do so;
>
> **Second**: that Muhammad Pahlawan, conscious that he was engaging in wrongdoing, acted with intent to hinder, delay or prevent M.H., U.F., M.A., or Mu. A from communicating to a law enforcement officer information relating to the commission or possible commission of an offense;
>
> **Third**: that there was a reasonable likelihood that at least one of the communications targeted by Muhammad Pahlawan would have been made to a federal law enforcement officer; and
>
> **Fourth**: the information that would have been communicated related to the possible commission of a federal offense.

ii. <u>Potential trial issues that may arise</u>

The government must prove that Mr. Pahlawan acted with the intent to hinder a law enforcement officer investigating the possible commission of a federal criminal offense. The government has previously argued that this is simply a legal question, not a jury question. But, in *Torres*, the Supreme Court analyzed the question of whether a state statute that did not include an interstate commerce element

categorically prevented that statute from being an "aggravated felony" under federal law governing alien removals after conviction for aggravated felonies. *Torres v. Lynch*, 578 U.S. 452, 467-69 (2016).

In coming to the conclusion that the jurisdictional elements of such statutes could be set aside for purposes of the categorical analysis, the Supreme Court made some important observations about the law's treatment of substantive verses purely jurisdictional elements. First, the *Torres* Court observed that "[b]oth kinds of elements must be proved to a jury beyond a reasonable doubt; and because that is so, both may play a real role in a criminal case." *Id.* at 467. Second, "[i]n general, courts interpret criminal statutes to require that a defendant possess a mens rea, or guilty mind, as to every element of an offense ... even when the statute by its terms does not contain any demand of that kind." *Id.* (internal quotation marks omitted). Third, "when Congress has said nothing about the mental state pertaining to a jurisdictional element, the default rule flips[.]" *Id.* at 468. And fourth, some statutes may present "some tough questions . . . where an element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful." *Id.* at 470-71.

That is the case here. In 18 U.S.C. § 1512(g)(2), Congress made clear that no state of mind need be proven as to whether "the law enforcement officer is an officer or employee of the Federal government . . . ." That definition of the jurisdictional element in § 1512, however, also makes clear that the mens rea exemption in the

jurisdictional element of § 1512 is limited to whether the law enforcement officer in question was a federal law enforcement officer verses a state (or other sovereign's) law enforcement officer. *See, e.g.*, *Fowler v. United States*, 563 U.S. 668, 672-78 (2011). The jurisdictional question does not encompass the "law enforcement officer" portion of the elements. *Id.* at 678 ("Government must show that the likelihood of communication to a federal officer was more than remote, outlandish or simply hypothetical. Jones, who kills Smith to prevent his communicating with law enforcement officers in general, does not kill Smith to prevent his communicating with Lithuanian law enforcement officers, for there is no reasonable likelihood that any Lithuanian officers would become involved.").

The government has previously argued that *Feola* and *Evans* dictate otherwise. In *Feola*, the Supreme Court analyzed what mens rea was required as to the victim's status as a federal officer under the federal assault statute in 18 U.S.C. § 111. In so analyzing, the Supreme Court drew a distinction between the purpose of the federal assault statute and statutes criminalizing obstruction. The *Feola* Court observed:

> If the primary purpose is to protect federal law enforcement personnel, that purpose could well be frustrated by the imposition of a strict scienter requirement. On the other hand, if § 111 is seen primarily as an anti-obstruction statute, it is likely that Congress intended criminal liability to be imposed only when a person acted with the specific intent to impede enforcement activities. Otherwise, it has been said: Were knowledge not required in obstruction of justice offenses described by these terms, wholly innocent (or even socially desirable) behavior could be transformed into a felony by the wholly fortuitous circumstance of the concealed identity of the person resisted.

*Id.* at 678-79 (internal quotation marks omitted). Section 1512, unlike § 111, is without doubt a statute whose aim is to proscribe obstruction with law enforcement investigations[1]. Thus, § 1512 requires proof beyond a reasonable doubt of knowledge that the information alleged to have been impeded was going to a law enforcement investigation.

Furthermore, the government has charged Mr. Pahlawan with "corruptly persuading" the persons alleged in Count Seven with the "intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense." ECF No. 239 at 18. To prove that, the government must prove beyond a reasonable doubt that Mr. Pahlawan was conscious of his wrongdoing at the same time that he knew his actions were likely to affect the criminal investigation. *See, e.g.*, *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) ("A 'knowingly . . . corrup[t] persuade[r]' cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material.") (alterations in original). In this case, the government will be unable to meet its burden on that point.

[1] The same analytical flaws as to the statute in question's aim apply to the government's previous reliance on *United States v. Evans*, 74 F.4th 597 (4th Cir. 2023), which analyzed the aim of the federal arson statute in 18 U.S.C. § 1855.

**f. Count Nine**

i. Essential elements

In order to sustain its burden of proof for the crime of providing materially false information to a federal law enforcement officer during a boarding of a vessel, the government must prove each of the following (4) four elements beyond a reasonable doubt:

**First**: that between January 11 and January 13, 2024, Muhammad Pahlawan, a crewmember of a dhow, knowingly provided materially false information about the identity of the dhow's captain;

**Second**: that Muhammad Pahlawan provided such information knowing that it was conveyed to a Federal law enforcement officer;

**Third**: that Muhammad Pahlawan provided such information during a boarding; and

**Fourth**: that the boarded vessel was subject to the jurisdiction of the United States.

ii. Potential trial issues that may arise

The government bears the burden of proving that the launch was a "vessel without nationality." *See United States v. Prado*, 933 F.3d 121, 153-54 (2d Cir. 2019) (explaining government's burden). This is a jurisdictional element, so it must be "proven to a jury beyond a reasonable doubt" just like a substantive element. *Torres v. Lynch*, 578 U.S. 452, 467 (2016); *see Taylor v. United States*, 579 U.S. 301, 308

(2016) ("There is no question that the Government in a Hobbs Act prosecution must prove beyond a reasonable doubt that the defendant engaged in conduct that satisfies the Act's commerce element."); *Prado*, 933 F.3d at 139 n.9 ("[I]n prosecutions . . . with respect to vessels 'subject to the jurisdiction of the United States,' trial courts might be well advised . . . to submit the issue of jurisdiction over the vessel to the jury."); *United States v. Pantana Perez*, 619 F.3d 117, 120 (1st Cir. 2010) (submitting jurisdictional element to the jury). Here, the government cannot prove that the launch in this case was a "vessel without nationality" under 46 U.S.C. § 70502.

Further, as in Count Seven, the government must prove that Mr. Pahlawan provided false information to someone he understood to be a federal law enforcement officer. The government has previously argued that this is simply a legal question, not a jury question. But, in *Torres*, the Supreme Court analyzed the question of whether a state statute that did not include an interstate commerce element categorically prevented that statute from being an "aggravated felony" under federal law governing alien removals after conviction for aggravated felonies. *Torres v. Lynch*, 578 U.S. 452, 467-69 (2016).

In coming to the conclusion that the jurisdictional elements of such statutes could be set aside for purposes of the categorical analysis, the Supreme Court made some important observations about the law's treatment of substantive verses purely jurisdictional elements. First, the *Torres* Court observed that "[b]oth kinds of elements must be proved to a jury beyond a reasonable doubt; and because that is so,

both may play a real role in a criminal case." *Id.* at 467. Second, "[i]n general, courts interpret criminal statutes to require that a defendant possess a mens rea, or guilty mind, as to every element of an offense ... even when the statute by its terms does not contain any demand of that kind." *Id.* (internal quotation marks omitted). Third, "when Congress has said nothing about the mental state pertaining to a jurisdictional element, the default rule flips[.]" *Id.* at 468. And fourth, some statutes may present "some tough questions . . . where an element that makes evident Congress's regulatory power also might play a role in defining the behavior Congress thought harmful." *Id.* at 470-71. That is the case here. In 18 U.S.C. § 2237, the "requisite mental intent for a conviction under this section is 'knowingly.'" *United States v. Pina-Suarez*, 280 F. App'x 813, 818 (11th Cir. 2008); *see also* ECF No. 239 at 20.

Additionally, Mr. Pahlawan has a viable defense that the alleged statement was not material. As the Fourth Circuit has observed in *Sarihifard*:

> An essential element in both grand jury perjury and the crime of making false statements is materiality. *See United States v. Gaudin*, 515 U.S. 506 ... (1995). "A statement is material if it has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *United States v. Littleton*, 76 F.3d 614, 618 (4th Cir. 1996). It is irrelevant whether the false statement actually influenced or affected the decision-making process of the agency or fact finding body. *Arch Trading Co.*, 987 F.2d at 1095; *Friedhaber*, 856 F.2d at 642. As materiality is an essential element of both perjury and making false statements, a defendant is entitled to have a jury decide the question of whether a false statement was capable of influencing the decisionmaking body to which it was addressed. *Id.* Again, the jury is the ultimate arbiter of whether the government has met its burden of proof. *Id.*

*United States v. Sarihifard*, 155 F.3d 301, 306-07 (4th Cir. 1998).

Respectfully submitted,
MUHAMMAD PAHLAWAN

By counsel,

____________/s/_____________
Amy L. Austin
Va. Bar No. 46579
Counsel for Mr. Pahlawan
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad St., Ste. 3600
Richmond, VA 23219
(804) 565-0880
amy_austin@fd.org

Laura Koenig
Va. Bar No. 86840
Assistant Federal Public Defender
Office of the Federal Public Defender
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0881
Fax (804) 648-5033
laura_koenig@fd.org

Geremy C. Kamens
Va. Bar No. 41596
Federal Public Defender
Office of the Federal Public Defender
1650 King St., Suite 500
Alexandria, Virginia 22314
(703) 600-0800
(703) 600-0880 (fax)
Geremy_Kamens@fd.org

Jessica Nicole Carmichael
Carmichael Ellis & Brock
Va. Bar No. 78339
108 N Alfred St, 1st Floor
Alexandria, VA 22314
703-684-7908

Fax: 703-649-6360
jessica@carmichaellegal.com